UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JHONNY VERA and RICARDO BAUTISTA, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>HOMEDELIVERYLINK, INC,<br><br>Defendant. | No. 23 CV 14278<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jhonny Vera and Ricardo Bautista drove delivery trucks for defendant HomeDeliveryLink, Inc. ("HDL"), a logistics company that arranges for home delivery of retail merchandise. Plaintiffs allege that HDL violated the Illinois Wage and Payment Collection Act ("the Act") by misclassifying their drivers as independent contractors, who are not protected by the Act, and thus improperly deducted certain expenses from drivers' wages and failed to reimburse drivers for others. Plaintiffs have sued on behalf of themselves and other HDL drivers who contracted with HDL to provide delivery services in Illinois since September 2013; personally made deliveries for HDL full-time; and were classified as independent contractors.

Plaintiffs now move to certify the class. [20] For the reasons discussed below, their motion is granted.

I. **Legal Standards**

On a motion for class certification under Rule 23, "[t]he party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). If there are material factual disputes that bear on the requirements for class certification, the Court must resolve those evidentiary disputes before deciding whether to certify the class. *Id.* at 377 (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Class-certification proceedings are not a "dress rehearsal for the trial on the merits," and the Court can only evaluate evidence to decide whether certification is proper. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

II. **Background**

Plaintiffs Vera and Bautista drove delivery trucks for HDL, a company that provides delivery of retail merchandise, such as furniture, to its customers. [1] ¶¶ 1, 10.[1] HDL classifies all of its Illinois drivers as independent contractors, though plaintiffs dispute that this classification is proper. *Id.* ¶¶ 12-13.

Plaintiffs allege that, despite their independent contractor classification, HDL exercised significant control over their day-to-day work. [1] ¶¶ 13–14. For example, plaintiffs say that they and other drivers were required to make deliveries five or six days a week; attend meetings to receive instructions on how to make deliveries and

---

[1] The background facts come from the complaint and exhibits the parties submitted along with their class-certification briefs.

interact with customers; wear a uniform; regularly check in with HDL dispatchers to follow their instructions about what deliveries to make, when and where to pick up those deliveries, and which routes to take; comply with HDL's delivery schedule; use a phone app to track driver progress throughout the day; regularly report to HDL staff and the HDL office in Illinois; and drive trucks that met specifications provided by HDL. [1] ¶¶ 14–15; [20-2] ¶¶ 3–5, 8–14; [20-3] ¶¶ 3–5, 9–16. Plaintiffs further allege they were required to work full-time and were not able to make deliveries for other companies.[2] [1] ¶ 14(a); [20-2] ¶¶ 3–4; [20-3] ¶¶ 3–4.

In terms of compensation, plaintiffs allege that they were paid "on a job rate basis," meaning they received a fixed amount of money for each delivery. [1] ¶ 19. Plaintiffs also maintain that they were required to obtain and pay for insurance at levels dictated by HDL, as well as to pay for fuel and other expenses, which amounted to thousands of dollars a month. *Id.* ¶ 23. Also according to plaintiffs, HDL, at its sole discretion, made deductions from plaintiffs' compensation, for example to cover costs if the goods or customer property were damaged during delivery. *Id.* ¶¶ 22, 39.

Plaintiffs, on behalf of themselves and a putative class of Illinois drivers, sued HDL, alleging that the deductions and unreimbursed business expenses violated the Act. [1] ¶¶ 1–3. Plaintiffs now move to certify a class. [20].

---

[2] HDL notes that some Illinois drivers may not have worked full-time for HDL, *see* [42] at 22, but those drivers are already excluded from the putative class that plaintiffs seek to certify, *see* [20] at 2 (plaintiffs seek to "certify a class consisting of all individuals who … made deliveries for HDL personally, full-time").

3

### III. Analysis

Rule 23(a) of the Federal Rules of Civil Procedure provides the prerequisites for bringing a class action in federal court, including (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Plaintiffs who establish all of those elements must then show they qualify for a particular type of class action under Rule 23(b). The Court will proceed through each requirement in turn.

#### A. Rule 23(a) Prerequisites

Plaintiffs propose a class "of all individuals who contracted to provide delivery services for HDL as delivery drivers in Illinois, and who personally provided delivery services to HDL, who have either been classified as independent contractors or have not been paid or treated as employees during the relevant statutory period." [1] ¶ 2; [20] at 2.

##### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impractical." The Seventh Circuit has instructed that "[w]hile there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). HDL indicates that it contracted with "approximately 130 motor carriers" during the relevant time period. [42] at 10; [20-11] at 4. Plaintiffs contend that all 130 contractors are potential class members: that is, individuals who contracted with HDL and personally drove full-time. [20] at 22. Plaintiffs also note that the contractors are dispersed throughout Illinois, making individual joinder even more impractical. *Id.*

4

This state of affairs is enough to satisfy numerosity at this stage. HDL argues that some of the proposed class members did not actually sign contracts with HDL, *see* [42] at 8, and that some of the signatories to the contracts were not drivers, *id.* at 21. But even if only one-third of contractors were full-time drivers, the proposed class would still meet the numerosity requirement. *See Mulvania*, 850 F.3d at 859.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The key is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up). Put another way, the Court must determine if the question is "capable of proof at trial through evidence that is common to the class rather than individual members." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015) (quoting *Messner*, 669 F.3d at 818). A single common question of law or fact is sufficient to establish commonality, *id.* at 374, and the Court need not resolve that question at this point, *id.* at 376. Rather, plaintiffs must merely demonstrate that a question susceptible to class-wide resolution exists. *Id.* at 375.

The Court's commonality analysis begins with an identification of the elements of plaintiffs' claims. *See Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339–40 (7th Cir. 2023) (by identifying the elements of a plaintiff's claims, a court can "better understand better understand the relationship between each claim's common and individual questions"). The Act "provides employees with a cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILCS 115/3). Wages

5

are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. So, any claim under the Act must at the threshold establish (1) the existence of an employee/employer relationship, and (2) an agreement to pay compensation to the employee. Illinois courts have noted that the Act "provides remedies more expansive than a common law breach of contract action" because "agreement" is defined more broadly than a contract. *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (1st Dist. 2004).

As relevant here, the Act's wage protections prohibit "deductions by employers from wages or final compensation" unless those "deductions are made with the express written consent of the employee, given freely at the time the deduction is made."[3] 820 ILCS 115/9. Similarly, the Act mandates that "employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer" so long as the employee submits the expenses for reimbursement within 30 days. 820 ILCS 115/9.5(a).

Plaintiffs contend that the threshold question of whether full-time HDL drivers classified as independent contractors were actually "employees" for the purpose of the Act—and thus subject to its protections involving paycheck deductions and business expenses—is susceptible to class-wide resolution. [20] at 15-19.

---

[3] The Act allows for deductions in certain other circumstances, but none apply here. *See* 820 ILCS 115/9.

The Court agrees. The Act presumes that "any individual permitted to work by an employer in an occupation" is an "employee" unless the employer meets all three parts of the so-called "ABC test": (A) that the individual "has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact"; (B) "performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer"; and (C) "who is in an independently established trade, occupation, profession or business." 820 ILCS 115/2. The test is conjunctive, so if an employer cannot satisfy every prong, an individual is an employee for the purpose of the Act. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (citing *Novakovic v. Samutin*, 354 Ill. App. 3d 660, 668 (1st Dist. 2004)).

Prong B of the test involves an inquiry into HDL's business practices, and thus "[t]here is no doubt that common evidence will satisfy the second prong of the test." *Id.* at 1059. HDL's "usual course of business" or "place[] of business" would not vary by individual driver, so determining that usual course or place would resolve that issue for the entire putative class. At the class-certification stage, the Court's assessment regarding Prong B, by itself, is sufficient to meet the commonality requirement. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (plaintiff seeking class certification is not required to prove that each "element of her claim is susceptible to classwide proof") (cleaned up).

The Court nonetheless explains why Prong A is susceptible to class-wide resolution as well. Plaintiffs argue that they and the putative class members are

7

subject to uniform work policies via a standard HDL carrier agreement and a document that they refer to as a company handbook. [20] at 2-3. Whether or not the policies reflected in those documents governed the class is capable of class-wide resolution: they either did or they didn't. *See Bell*, 800 F.3d at 375 (where "evidence that the denial of overtime pay came from a broader company policy and not from the discretionary decisions of individual managers," plaintiff established a common question capable of class-wide resolution).

HDL contends that because some drivers, like Vera, hired helpers and other drivers a number of potential class members would be subject to a joint employment test rather than the ABC test—e.g., perhaps Vera exercised actual control over his drivers rather than HDL. [42] at 14-16, 24; *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 117 (2005) (discussing joint employment in the context of Illinois wage claims). HDL argues that plaintiffs therefore have not proven "that an efficient and manageable way to resolve the [] employment element [of the Act] for all proposed class members exists" because actual control can only be determined on an individualized basis.[4] *Id.* at 16, 24. But again, plaintiffs need not answer—yet—the question of whether HDL was an employer under the Act. They must only show that there is common evidence that can lead to a common answer. And evidence of common practices by HDL can establish a common answer as to whether HDL controlled class

---

[4] *Andrews* identifies as "relevant factors to consider … the putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." 217 Ill. 2d at 117 (cleaned up).

members. Even if HDL is right that its liability ultimately turns on actual control under *Andrews*, whether or not HDL had contractual control over the class members still bears on whether that control was exercised and is susceptible to class-wide proof. *See Brown v. Club Assist Rd. Serv. U.S., Inc.*, No. 12-CV-5710, 2015 WL 13650775, at *13 & n.5 (N.D. Ill. Mar. 13, 2015).

With respect to carrier agreements, HDL acknowledges their existence, *see* [42] at 4, but appears to dispute that all plaintiffs or putative class members were subject to them, *id.* at 16, and even suggests that certain carrier agreements plaintiffs contain forged signatures, *id.* at 5, 8, 12, 17. And with respect to the company handbook, HDL appears to dispute its existence altogether. *Id.* at 16. These arguments do not avail HDL at this stage of the proceedings where the Court need not *resolve* the class-wide question; rather, it must merely determine whether, by a preponderance of evidence, a class-wide question exists. *Bell*, 800 F.3d at 373. By supplying exemplar carrier agreements and a company handbook, *see* [20] at 17; [22]; [23], plaintiffs have sufficiently supported the existence of a question of class-wide policy of control of drivers. If HDL is correct that, in fact, no such policy existed or that the documents plaintiffs rely on did not apply to HDL drivers, then HDL can prevail on that issue on the merits at a later phase of litigation.

HDL's attempts to undercut plaintiffs' evidence at this juncture fail for other reasons as well. For instance, HDL's attacks on the validity of the company handbook are not compelling where HDL itself produced that document during discovery. Although the handbook need not be admissible under the Federal Rules of Evidence

9

at this stage of the proceedings,[5] the fact that the handbook came from HDL does suggest that it constitutes a relevant and authentic company record, as the policies it contains were possessed by the very entity alleged to have adopted them. In addition, to the extent class representatives and putative class members testified that they did not sign the specific carrier agreement put before them during their depositions, Illinois law does not even require the existence of a written contract for wage claims under the Act, *see Zabinsky*, 347 Ill. App. 3d at 249 , and the deponents' testimony separately suggests that agreements between them and HDL nonetheless existed, *see, e.g.*, [43-5] at 56:2-21; [43-8] at 121:6-24.

Similarly, that a driver has incorporated as an LLC does not necessarily alter the analysis of whether the driver is an employee under the Act. *See Bruger v. Olero*,

---

[5] HDL relies on *Hansen v. Country Mut. Ins. Co.*, 18 C 244, 2023 WL 6291629 (N.D. Ill. Sept. 25, 2023), to argue that plaintiffs must present "adequate admissible evidence to justify class certification" and must therefore also lay a foundation for the introduction of documentary evidence, like the purported company handbook. *Id.* at *11; [42] at 16. But *Hansen* refers to a Seventh Circuit rule concerning "*expert* evidence in support of class-certification motions," not evidence generally. *Hansen*, 2023 WL 6291629, at *11 (citing Messner, 669 F.3d at 812–13) (emphasis added). And *Hansen* also notes that "[t]he Seventh Circuit has not explicitly addressed whether other evidentiary rules apply in full force to pre-trial motions, and other circuits are split as to how demanding admissibility standards should be at the class-certification stage. *Id.* Other courts in this district have concluded that "evidence need not be admissible for purposes of resolving class certification issues." *Craftwood Lumber Co. v. Essendant, Inc.*, No. 16 C 4321, 2020 WL 3000255, at *5 (N.D. Ill. June 4, 2020) (listing cases). At this stage of the proceedings, where the handbook (1) was produced by HDL in discovery, (2) looks like a handbook (i.e., its "appearance, contents, substance, internal patterns" are consistent with that characterization), and (3) is consistent with plaintiffs' declarations about alleged HDL policies, there is enough here to satisfy the Court that the handbook is what the plaintiffs represent it to be under a more appropriately relaxed application of pertinent evidentiary rules. *See* Fed. R. Evid. 901(a); *see also In re Fluidmaster, Inc., Water Connector Components Products Liab. Litig.*, 14-CV-5696, 2017 WL 1196990, at *42 (N.D. Ill. Mar. 31, 2017) ("a rigid application of the Federal Rules of Evidence for evaluating the authenticity and admissibility of deposition testimony and affidavits attached to a motion for class certification is not required").

*Inc.*, 434 F. Supp. 3d 647, 655 (N.D. Ill. 2020); *Ware v. Indus. Comm'n*, 318 Ill. App. 3d 1117, 1127 (1st Dist. 2000); *Johnson v. Logistics*, 16-CV-06776, 2018 WL 1519157, at *9 (N.D. Ill. Mar. 28, 2018). HDL's attempts to distinguish *Ware* and *Bruger* fall flat. According to HDL, neither case "included individuals operating multimillion dollar businesses, with upwards of ten or more workers providing delivery services to numerous customers." [42] at 13. But HDL never explains why the revenue or the number of employees of the corporate entities is relevant to the existence of an employment agreement between plaintiffs or other putative class members and HDL.[6]

Finally, HDL emphasizes that "[t]he scads of drivers who [Vera's corporate entity] Dime Delivery, [Bautista's corporate entity] BP Deliveries, and other motor carriers utilized have no contractual relationship with HDL." [42] at 18. This may be true, but it is also beside the point: plaintiffs' class definition includes only those "individuals who contracted to provide delivery services for HDL" and would thus exclude those who had no such agreement. Plaintiffs indicate they believe there are

---

[6] HDL also invokes *Patel v. 7-Eleven, Inc.*, 18 C 07010, 2019 WL 3554438 (N.D. Ill. Aug. 5, 2019), to argue that plaintiffs must show that the contractor LLCs were "sham corporations" to prevail, *id.* at *4. But this misreads *Patel*. In that case, 7-Eleven argued that a franchisee was not an employee under the Act because the franchisee was not "party to any franchise agreement with 7-Eleven"; instead, 7-Eleven had entered an agreement with the franchisee's corporation. *Id.* After noting that it was "not aware of any law creating a hard-and-fast rule that prohibits a franchisee corporation's sole owner from qualifying as an employee of the franchisor under the IWPCA," the court in *Patel* suggested that the franchisee could amend his complaint if he "believe[d]—and ha[d] facts to support—that [franchisee's corporation was] a sham corporation, *or that he had an employment agreement with 7-Eleven distinct from [his corporation's] franchise agreement.*" *Id.* (emphasis added). Here, plaintiffs credibly argue they could establish by class-wide evidence—the allegedly uniform carrier agreements and company policies—that such an employment agreement existed between HDL and contractor-drivers.

11

approximately 130 potential class members, [20] at 14, which is the number of contractors HDL says it had during the relevant period rather than the "approximately 370 to 380 drivers," *see* [20-11] at 3. The Court therefore understands the proposed class to include those who, like Vera and Bautista, both owned a corporation that contracted with HDL *and* drove full-time for HDL.

Plaintiffs also contend that Prong C is susceptible to class-wide resolution, [20] at 18-19, but because Prongs A and B satisfy the commonality requirement, the Court need not delve into Prong C at this time.

### 3. Typicality

Next is typicality under Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To satisfy typicality, plaintiffs' claims must "rise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). The individual claims may feature some factual variations as long as they "have the same essential characteristics." *Id.* A court's determination in this regard only preliminary. *Id.* (citing *Messner*, 669 F.3d at 811).

Plaintiffs' claims appear typical of those of the proposed class. Both allege that they signed contracts with HDL via their LLCs, that they personally drove full-time for HDL during the relevant period, and that they were improperly subjected to deductions and made to pay business expenses in violation of the Act. [20-2] ¶¶ 2-5, 17-19; [20-3] ¶¶ 2-5, 17-19. All claims arise out of the same statute, and plaintiffs

12

have provided evidence of similar relationships between the plaintiffs, the putative class members, and HDL.

HDL expends significant effort arguing that potential variations between plaintiffs and putative class members over issues like their ability to work other businesses, decline work from HDL, attendance at HDL driver meetings, and the precise uniform requirements defeats typicality. [42] at 18-21. But these arguments venture too far into the merits of plaintiffs' claims. The question at this stage is not whether HDL actually exercised control over plaintiffs and other putative class members such that they were not actually independent contractors; rather, the question is whether plaintiffs' claims are typical of those of the putative class. Whether or not plaintiffs attended driver meetings or wore the same uniform as other class members may ultimately help resolve the merits of their claim, but those potential variations do not mean their claims do not "rise from the same events or course of conduct." *Beaton*, 907 F.3d at 1026.

### 4. Adequacy

Finally, representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry applies to the adequacy of both the named plaintiffs and plaintiffs' counsel. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)). HDL does not appear to contest the adequacy of either plaintiffs or their attorneys to represent the putative class, and the Court's own inquiry has revealed no cause for concern.

In particular, plaintiffs' counsel note their significant experience in class action litigation, including the Illinois wage law at issue here. *See Hill v. Cargo Runner Co.*, No. 22-CV-00910, 2023 WL 6213674 (N.D. Ill. Sept. 25, 2023); *BeavEx*, 810 F.3d at 1061. The Court sees no apparent conflict between plaintiffs' counsel and the class; HDL points to none either. And both Vera and Bautista are members of the class and have the same injury and interest as other members. *See Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021); *see generally* [20-2]; [20-3]. Representatives might be inadequate if they have some conflict of interest or are subject to a substantial defense unique to them, *see Santiago*, 19 F.4th at 1010, 1018, but neither party has identified such a conflict or defense, and the Court sees none either.

### B. Rule 23(b)(3) Class Type

Plaintiffs have met the Rule 23(a) criteria, but that is not enough: They must also show under Rule 23(b)(3) that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See BeavEx*, 810 F.3d at 1059. A common question predominates when "a failure of proof on the common question would end the case and the whole class will prevail or fail in unison." *Bell*, 800 F.3d at 378 (cleaned up).

Here, the threshold question of whether class members were HDL employees under the Act predominates. As noted earlier, the answer to that question bears on both their deduction and reimbursement claims under the Act. If they are employees, they are subject to the Act and HDL's imposing certain deductions or failing to reimburse certain business expenses violated the Act. If they are instead independent

14

contractors under Illinois law, then they are not subject to the Act and no class member has a wage claim against HDL.

Plaintiffs also meet the standard for superiority. The individual claims rise and fall on the answer to the class-wide question of whether these full-time HDL drivers are employees for the purpose of the Act. Because at least parts of the ABC test are subject to common proof, class-wide resolution is the most efficient means of resolving that question because it would "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment).

The Court also finds no issues with class certification under the Rule 23(b)(3) factors: neither party has articulated a significant interest in individual control of the prosecution or defense of separate actions; the Court is unaware of any existing litigation involving the parties; the Northern District of Illinois is an adequate forum for an Illinois class; and, as the parties both note, similar class actions are regularly handled by federal courts.

## IV. Conclusion

The motion to certify the class [20] is granted, and the class is certified as follows: All individuals who contracted with HDL to provide delivery services in Illinois from September 1, 2013, until the present; who made deliveries for HDL personally and full-time; and who were classified as independent contractors. The

Court also appoints named Plaintiffs Vera and Bautista as class representatives and Lichten & Liss-Riordan, P.C. as class counsel.

                                                                                             _____
                                                                                             Georgia N. Alexakis
                                                                                            United States District Judge

Date: 1/2/25