## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JHONNY VERA and RICARDO BAUTISTA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HOMEDELIVERYLINK, INC <br><br> Defendants. | Case No. 1:23-cv-14278 <br><br> Judge Georgia N. Alexakis |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

I. **INTRODUCTION**

Plaintiffs Jhonny Vera and Ricardo Bautista seek preliminary approval of a class action settlement agreement entered into between the Parties in this action following two years of contentious litigation.[1] This case has been brought as a Rule 23 Class Action on behalf of persons who contracted to provide delivery services for Defendant HomeDeliveryLink, Inc. ("HDL"). Plaintiffs' primary claim is that they and other delivery drivers were misclassified as independent contractors under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq., and, as a result of this misclassification, HDL violated the IWCPA by making unlawful deductions from the delivery drivers' wages. HDL, has claimed, among other defenses, that the drivers were independent contractors and not employees; and that any deductions HDL made from the delivery drivers' pay were properly authorized, under the IWPCA or otherwise.

On January 2, 2025, the Court certified a class of "[a]ll individuals who contracted with HDL to provide delivery services in Illinois from September 1, 2013, until the present; who made deliveries for HDL personally and full-time; and who were classified as independent contractors." ECF No. 77, p. 15. Plaintiffs subsequently proposed, and the Court adopted, the following clarification to the class definition: "'full-time' is defined as 'personally making deliveries four days a week for at least three consecutive months,'" and "[t]he class excludes owners of motor carriers that operated 5 or more trucks on a given day." ECF No. 89. Defendant provided a preliminary list of approximately 89 individuals who potentially met the class criteria.

The Parties subsequently engaged in extensive discovery, exchanging thousands of pages of documents. In addition, Plaintiffs' Counsel used the data provided by Defendant to prepare a final list of the 50 individuals who met the class definition, and to calculate the damages owed to

---

[1] The proposed settlement agreement is attached hereto as Exhibit A.

1

these individuals. The proposed settlement, which was reached following two years of litigation, extensive discovery, multiple hearings, and a settlement conference facilitated by Magistrate Judge Weisman, creates a non-reversionary settlement fund of $975,000.00. No portion of the settlement will revert to HDL.

If approved by the Court, notice of the settlement and its terms will be mailed and emailed to all class members, including follow-up attempts to reach class members by email and/or phone if necessary. All settlement class members who do not exclude themselves from the settlement will be sent a pro rata share of the settlement, based on the number of weeks in which they worked for HDL and met the class definition. Thus, the drivers who had a longer tenure with HDL, and who suffered a larger share of deductions, will receive more compensation in the settlement.

Class Counsel estimate that the Gross Settlement Amount of $975,000.00 represents approximately 43% of settlement class members' damages, associated with deductions and expenses, in this case. Because the legality of most of the deductions and expenses in this case is hotly contested between the Parties, and would be at trial, the settlement likely represents an even higher percentage of the settlement class members' damages.[2] Further because the class size is relatively low (just 50 members), the settlement shares will still be relatively high. (see below). Accordingly, Class Counsel believe that the settlement is fair and reasonable under the circumstances, and in light of the time, expense, and risks involved in trial and further appellate proceedings. Plaintiffs, therefore, request that the Court issue an Order 1) granting preliminary approval of the class action settlement; 2) approving the proposed Notice in substance and form;

---

[2] Among other things, HDL has argued that the deductions Plaintiffs challenge in this case were not deductions from "wages"; that deductions for truck payments and insurance, which represent a significant component of the damages in this case, were for Plaintiffs' and class members' benefit, and are therefore not recoverable under the IWPCA; and that Plaintiffs did not timely submit requests for expense reimbursement, as required under the IWPCA. Lichten Decl. ¶ 10.

3) authorizing Class Counsel to initiate the Notice process set forth in the Parties' Settlement Agreement as described below; and 4) setting a date for a hearing on final approval of the class action settlement for 75 days after the date of preliminary approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs Jhonny Vera and Ricardo Bautista brought claims on behalf of themselves and other similarly situated drivers who made deliveries for HDL in Illinois, alleging that HDL misclassified them as independent contractors, took deductions from their pay, and forced them to incur business expenses in violation of the IWPCA on September 28, 2023, by filing a Class Action Complaint in this Court. ECF No. 1. On January 2, 2025, the Court certified a class of "[a]ll individuals who contracted with HDL to provide delivery services in Illinois from September 1, 2013, until the present; who made deliveries for HDL personally and full-time; and who were classified as independent contractors." ECF No. 77, p. 15. Plaintiffs subsequently proposed, and the Court adopted, the following clarification to the class definition: "'full-time' is defined as 'personally making deliveries four days a week for at least three consecutive months,'" and "[t]he class excludes owners of motor carriers that operated 5 or more trucks on a given day." ECF No. 89.

Defendant provided a preliminary list of approximately 89 individuals who potentially met the class criteria. Ex. A at ¶ 29. The Parties then engaged in extensive discovery, exchanging thousands of pages of documents. Id. ¶¶ 29, 32. In addition, Plaintiffs' Counsel used the data provided by Defendant to prepare a final list of 50 individuals who met the class definition, and to calculate the damages owed to these individuals. Id. ¶ 22; Lichten Decl. ¶ 12.

Prior to reaching the settlement in this case, Plaintiffs provided their damages calculation to Defendant, and the Parties, through counsel, had informal settlement discussions. Lichten Decl. ¶¶ 8, 12. On November 21, 2025, the Parties participated in a settlement conference facilitated by

3

Magistrate Judge M. David Weisman. Ex. A ¶ 30. At this settlement conference, the Parties reached a settlement-in-principle, resulting in this Settlement Agreement. Id.

### III. TERMS OF THE FINANCIAL SETTLEMENT.

The total settlement amount is $975.000.00. Ex. A at ¶14. Given the multiple contested factual and legal issues in this case, Class Counsel believe that the financial settlement will provide reasonable compensation to the class for the alleged wrongs they have suffered. Lichten Decl. ¶ 9.

The settlement will be administered as follows: Notice will be mailed and emailed (to the extent email addresses are available), as well as sent by text message, to settlement class members. Ex. A at ¶ 51. Class Counsel may also follow up with settlement class members to ensure that they have received Notice and that their contact information is up to date. Id. Each settlement class member who does not exclude himself from the settlement will receive a settlement award, which will be paid out promptly after settlement funds are received from HDL. Id. at ¶ 56.

The settlement is non-reversionary, meaning that no portion of the funds will go back to HDL. Ex. A at ¶ 55. Any unclaimed proceeds remaining from the settlement will be sent to the Illinois Unclaimed Property Fund in the name of the settlement class members who did not cash their checks. Id. at 57. The Parties propose that, if approved by the Court, the Class Settlement Fund of $975,000.00 be used to:

1. Pay service awards in the amount of $20,000.00 each to Plaintiffs Johnny Vera and Ricardo Bautista, the two individuals who served as named Plaintiffs and actively participated in the case throughout the duration of the litigation, for a total of $40,000.00.

2. Pay an award to Class Counsel not to exceed 33% of the Class Settlement Fund for attorney's fees, litigation and mediation expenses for a total of $325,000.00; and

3. Pay the settlement administrator for the costs of administering the settlement. The remainder of the Settlement Fund after payments under Section 1-3 will be referred to as the "Net Settlement Fund."

4. From the Net Settlement Fund, totaling approximately $600,000.00, distribute settlement awards to the settlement class members. Class Counsel estimate the average settlement share at $12,000.00; the highest settlement share is in excess of $80,000.00.

### IV. PROCEDURES AND FORMULA FOR DISTRIBUTION OF THE CLASS FUNDS.

If this Court gives preliminary approval to the proposed settlement, the settlement administration will be conducted by a third-party settlement administrator selected by the Parties, Apex Class Action Administration. Ex. A at ¶ 27. A Notice (attached as Exhibit A to the Settlement Agreement) will be sent to each class member informing them of their right to participate in the settlement or object to the settlement. The notice will also inform individuals that this settlement will resolve all IWPCA claims that they may have had against HDL up until the date of execution of the settlement agreement.

Within seven (7) days after the Court grants preliminary approval of the settlement, HDL will provide the settlement administrator and Class Counsel with class members' names, last-known mailing addresses, email addresses, telephone numbers, and information sufficient for tax identification. Ex. A at ¶¶ 23, 48. Within fourteen (14) days after the Court grants preliminary approval, the settlement administrator will send notice of the settlement to settlement class members' last-known mail and email addresses. Id. at ¶ 51.

If Notices come back as undeliverable at the address provided, the settlement administrator perform a skip trace search, or comparable search, and will resend the Notice to any new or different address obtained for those individuals. Ex. A at ¶ 51. Class Counsel will also follow up by email and telephone to ensure as many individuals as possible are informed of the settlement

5

Id. Further, after settlement checks are sent out, the settlement administrator will make search for updated class member addresses and reissue settlement checks to the extent they come back as undeliverable. Id. at ¶ 56. Importantly, the settlement is non-reversionary. Id. ¶ 55. Proceeds from uncashed checks will be sent to the Illinois Unclaimed Property Fund in the name of the settlement class members who did not cash their checks. Id. at 57.

HDL will pay the gross settlement amount of $795,000.00 fourteen (14) days after the Court grants final approval of the settlement. Ex. A at ¶ 55. The portion of the Net Settlement Amount payable to each settlement class member will be calculated based on that individual's number of eligible workweeks (or weeks during which the settlement class member meets the class criteria), as a percentage of the total combined eligible workweeks attributable to all settlement class members. Id. at ¶ 43.

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS, SHOULD BE PRELIMINARIY APPROVED.

### A. The Proposed Settlement Meets the Legal Standard for Preliminary Settlement Approval.

It is well established that courts favor settlements of lawsuits over continued litigation. See, e.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996); Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1166 (7th Cir. 1980) (providing that "[f]ederal courts look with great favor upon the voluntary resolution of litigation through settlement"); Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980) overruled on other grounds ("In the class action context in particular, 'there is an overriding public interest in favor of settlement.'") (quoting Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.")).

6

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Before granting approval, a court should weigh whether "the proposed decree is lawful, fair, reasonable, and adequate." Illinois v. City of Chicago, 2019 WL 398703, at *4 (N.D. Ill. Jan. 31, 2019) (quoting EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985)) (quotations omitted). Courts should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness" and should consider the facts "in the light most favorable to the settlement." Id. at 1199 (quoting Isby, 75 F.3d at 1199) (quotations omitted). Furthermore, the decision of whether to approve a proposed settlement is left to the discretion of this Court. Wong v. Accretive Health, Inc., 773 F.3d 859, 862 (7th Cir. 2014).

When conducting a fairness determination, courts consider: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Id. at 863 (quoting Gautreaux v. Pierce, 690 F.2d 616, 631 (7th Cir.1982)). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." Id. at 864 (quoting In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). Generally, "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted). Moreover, "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." Binissia v. ABM Indus., Inc., 2017 WL 4180289, at *6 (N.D. Ill. Sept. 21, 2017) (quoting Burkholder v. City of Ft. Wayne, 750 F.Supp.2d

7

990, 995 (N.D. Ind. 2010)). Finally, an employer's financial condition may also be considered in determining whether a settlement is fair, adequate, and reasonable.[3]

Review of a proposed class settlement involves two steps: preliminary approval and a final "fairness hearing." Manual for Complex Litigation (Fourth) § 13.14. At the preliminary approval stage, "the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting Armstrong, 616 F.2d at 314 (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate")) (citing In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (holding preliminary approval determines whether the settlement is "possibly fair, reasonable, and adequate")). Thus, "courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." Id. at *6 (citing In re AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 346 (N.D. Ill.2010); Kessler v. Am. Resorts Int'l's Holiday Network, Ltd., 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). The Court's role at the preliminary approval stage is not "resolving the merits of the controversy or making a precise

---

[3] See e.g., Redman v. RadioShack Corp., 768 F.3d 622, 632 (7th Cir. 2014) (considering defendant's solvency when determining whether to approve the settlement); Lucas v. Vee Pak, Inc., 2017 WL 6733688, at *9-11 (N.D. Ill. Dec. 20, 2017) (finding proposed class settlement amount reasonable given defendant's inability to withstand a large judgment; Kleen Prods. LLC v. Int'l Paper Co., 2017 WL 5247928, at *2 (N.D. Ill. Oct. 17, 2017) (considering defendants' ability to pay when determining reasonableness of class settlement); Swift v. Direct Buy, Inc., 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) (citing In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005)) ("The financial condition of the defendant in class action settlement is a legitimate—if not entirely pragmatic—consideration.").

8

determination of the parties' respective legal rights." Hiram Walker & Sons, Inc., 768 F.2d at 889. Indeed, courts are "entitled to rely heavily on the opinion of competent counsel." Gautreaux, 690 F.2d at 634 (quoting Armstrong, 616 F.2d at 325) (quotations omitted). Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.

### B. The Proposed Settlement Satisfies the Requirements for Preliminary Approval.

Plaintiffs have alleged that they and the members of the class were misclassified as independent contractors under the IWPCA, and that, as a result, HDL took unlawful deductions from their pay, and forced them to incur business expenses that should have been borne by HDL. See ECF No. 1. Should this litigation continue, Plaintiffs must (1) maintain class certification in the face of efforts by HDL to decertify the class; (2) demonstrate, at summary judgment or trial, that they were employees of HDL under the IWPCA; and (3) prove that the deductions taken from the class members' pay, and the expenses they incurred, were unlawful under the IWPCA. See Lichten Decl. at ¶ 10. Defendant vehemently disputes Plaintiffs' position on each of these issues.

Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Class Counsel to conclude that a settlement with HDL is preferable to the significant risks for the class in pursuing this matter through summary judgment, trial and subsequent appeals. Most significantly, HDL will argue that even though it took deductions from class members' pay, these deductions do not violate the IWPCA, either because they are for the class members' benefit, or because they are authorized by the class members' contracts. Lichten Decl. ¶ 10. Specifically, HDL will argue that deductions for truck payments and insurance, which represent the bulk of the damages in this case, were for Plaintiffs' and class members' benefit, and are therefore not recoverable under the IWPCA. Id.. While Plaintiffs do not believe that the deductions taken by

HDL meet the requirements outlined by the Illinois Department of Labor's regulation, there is a substantial risk that the Court may find that some or all of the deductions are not recoverable under the IWPCA. In addition, with respect to Plaintiffs' expense claims under the IWPCA, HDL will argue that Plaintiffs either incurred the expenses for their own benefit and/or failed to request reimbursement for the expenses within 30 days, as required by the IWPCA. Id..

Thus, despite vigorously litigating this case for the past two years, Class Counsel has determined that, the best interests of the class are served by obtaining substantial compensation now in the form of the settlement before the Court, rather than face the risks, expense, and delays associated with briefing a decertification motion, briefing summary judgment motions, preparing for trial and subsequent appellate practice. Based on these considerations, Class Counsel strongly believe that the settlement negotiated here is fair, reasonable, and adequate.

In reaching this conclusion, Class Counsel have spent considerable time performing calculations and preparing a detailed damages model. Class Counsel calculate that the deductions and expenses which Plaintiffs would likely recover at trial are approximately $2.2 million. Lichten Decl. ¶ 13. The Gross Settlement Amount in this case represents approximately 43% of the settlement class members' damages. Id. Given the time, expense, and potential risks associated with continued litigation in this case, the settlement is reasonable.

Furthermore, the procedural background of this matter supports a finding that the settlement was negotiated at arm's length by experienced counsel and resolved bona fide disputes between their clients with respect to liability and the amounts due to members of the class. The case presented numerous and vigorously contested issues related to the classification of the class members, the applicability of Illinois law, and whether certain legal defenses provided HDL with a complete or partial defense to liability. The Parties have engaged in hotly contested litigation in this Court since this lawsuit was filed in 2023, conducting extensive written discovery, attending

numerous hearings with the Magistrate, completing multiple depositions, and engaging in extensive briefing before this Court and the Seventh Circuit.

Additionally, Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Notably, lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases across the country is a recognized expert in labor and employment law.[4] Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., are pioneers in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.[5] Those settlements contained very similar terms to the proposed settlement in this case, including the same basic method for notifying class members and distributing the settlement proceeds. Attorneys Lichten, Manewith and Savytska have obtained significant victories on behalf of delivery drivers bringing misclassification claims under the IWPCA, most recently obtaining summary judgment in Johnson v. Diakon Logistics, 2025 WL 964939, at *9 (N.D. Ill. Mar. 31,

---

[4] Among other things, Mr. Lichten successfully argued the landmark cases on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009) and the New Jersey wage law, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 453 (N.J. 2015). Both cases dealt with the same ABC employment relationship test included in the IWPCA. In the Seventh Circuit, Mr. Lichten has argued Johnson v. HDL Logistics, Inc., 44 F.4th 1048, 1053 (7th Cir. 2022) (holding that Illinois law applies to drivers claims arising under IWPCA); and Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (granting summary judgment and class certification for class of delivery drivers misclassified as independent contractors).

[5] Taveras v. XPO Last Mile, Inc., C.A. No. 15-1550 (D. Conn. Aug. 11, 2017) (Doc. # 123); Martins v. 3PD, Inc., C.A. No. 11-11313 (D. Mass. March 2, 2016) (Doc. # 209); Badia v. Homedeliverylink, Inc. et al., C.A. No. 12-06920-WJM (D.N.J. Sept. 25, 2015) (Doc. # 99); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

2025); Tsybikov v. Dovgal, 2023 WL 4029823 (N.D. Ill. June 15, 2023), and Prokhorov v. IIK Transport, Inc., 2024 WL 3694523 (N.D. Ill. Aug. 7, 2024).

Class Counsel are thus well aware of the law in this area, and their experience has provided the class with a high degree of expertise, which contributed to a favorable resolution of their claims against HDL. In light of the arm's-length negotiations in this case, which were conducted with the assistance of a top neutral mediator, and Class Counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval. See Armstrong, 616 F.2d at 314 (settlement agreement need only fall within reasonable range of possible approval to be preliminarily approved).

## VI. THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE.

The settlement also proposes service awards of up to $20,000.00 for each of the two named Plaintiffs. The proposed incentive payments are fair and reasonable, given that Plaintiffs initiated the lawsuit on behalf of their co-workers and because it was through their initiative that this recovery was obtained. Plaintiffs Vera and Bautista provided invaluable assistance to Class Counsel throughout the nine years this litigation has been pending, including helping Class Counsel develop the theory of the case and draft the Complaint, providing documents, preparing affidavits, responding to extensive discovery, submitting to depositions, and attending the mediation which ultimately resulted in this settlement. Courts have widely recognized that service awards serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements.[6] A 2006 study found that while the

---

[6] See Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (holding "named plaintiff is an essential ingredient of any class action," affirming incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); Douglas v. W. Union Co., 328 F.R.D. 204, 218-19 (N.D. Ill. 2018) (granting incentive award to named plaintiff); In re Compact Disc Min. Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher.[7] As one court observed, "[incentive] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Given Plaintiffs' significant contributions to this matter, the fact that they are the only two class representatives and faced potential retaliation from HDL and/or future employers in the trucking industry, the proposed service awards are fair and reasonable.

## VII. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT.

In the motion for final approval, Class Counsel will request an award of attorneys' fees and costs of $33% of the total settlement, or $325,000.00. This award would cover all work performed and costs incurred to date[8] by Class Counsel, as well as the significant work Class Counsel will perform in the next several months in calculating actual share distributions, following up with settlement class members, etc… Lichten Decl. ¶¶ 19-20.

Courts generally favor awarding fees from a common fund based upon a percentage of the fund. As the Supreme Court has explained:

---

[7] Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). The court in Scovil found that recent awards in employment cases reached $30,000 and higher. Id. (citing Cook, 142 F.3d at 1016 (approving $25,000 incentive award for one named plaintiff)); see also Brandon v. 3PD, Inc., No. 13-CV-03745, slip op (N.D. Ill. Jan. 26, 2016) (approving service awards of $20,000 to two plaintiffs, and $10,000 to one plaintiff); In re Broiler Chicken Antitrust Litig., 2021 WL 5578878, at *4-5 (N.D. Ill. Nov. 30, 2021) (granting $15,000 incentive award to named plaintiffs); Briggs v. PNC Fin. Servs. Grp., Inc., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (awarding $12,500 to named plaintiffs); Zolkos v. Scriptfleet, Inc., 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff).

[8] These include the substantial costs associated with multiple depositions, sending out class notice, and fees related to filing and investigating this case, among others. See Id.

13

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole . . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (citations omitted). Indeed, a 33% attorneys' fee award in a common fund case has been consistently approved as reasonable in wage and hour cases in the Northern District of Illinois.[9] Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

## VIII. CONCLUSION.

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant preliminary approval of this proposed settlement and allow Plaintiffs to send class members the proposed notice attached as Exhibit A to the Settlement Agreement.

Dated: January 20, 2026                                         Respectfully Submitted,

/s/ Olena Savytska
Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

---

[9] See McCue v. MB Fin., Inc., 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (finding that the Seventh Circuit's decision in Pierce v. Visteon Corp., 2015 WL 3985985 (7th Cir. July 1, 2015) did not preclude a percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Kujat v. Roundy's Supermarkets Inc., 2021 WL 4551198, at *3 (N.D. Ill. Aug. 11, 2021) (awarding one-third of total settlement amount as attorney's fees; Winking v. Smithfield Fresh Meats Corp., 2022 WL 16706898, at *2 (N.D. Ill. Nov. 4, 2022) (granting one-third of the gross settlement amount to plaintiffs' counsel as reasonable attorneys' fees.

14

15

        Bradley Manewith, IARDC # 6280535
        Lichten & Liss-Riordan, P.C.
        5 Revere Drive, Suite 200
        Northbrook, IL 60062
        Tel. (617) 994-5800
        Fax (617) 994-5801
        bmanewith@llrlaw.com

*Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

      I, Harold Lichten, hereby certify that a true and accurate copy of this document has been served on all Parties on January 20, 2026 via electronic filing.

                                         /s/ Olena Savytska
                                         Olena Savytska